UNITED STATES of America ex rel. S. PRAWER & COMPANY, Gilbert Prawer and Harvey Prawer, Plaintiffs/Relators,

v.

FLEET BANK OF MAINE, and Recoll Management Corporation, Defendants.

No. Civ. 93–165–P–H.

United States District Court, D. Maine.

Nov. 19, 1998.

David R. Collins, AUSA, Office of the U.S. Attorney, Portland, Maine, George C. Vitelli, Polly Dammann, John A. Kolar, U.S. Department of Justice, Civil Division, Washington, DC, for U.S.

Daniel G. Lilley, Daniel G. Lilley Law Offices, P.A., Portland, Maine, John P. McVeigh, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, Maine, Melinda J. Caterine, Moon, Moss, McGill & Bachelder, P.A., Portland, Maine, Jeffrey Bennett, Bennett, Bennett & Troiano, P.A., Portland, Maine, William A. Fogel, Portland, Maine, for plaintiffs Prawer.

Thomas F. Monaghan, John J. Wall, III, Monaghan, Leahy, Hochadel & Libby, Portland, Maine, for defendant Fleet Bank of Maine.

Michael J. Engelberg, Joseph Shea, Nutter, McClennen & Fish, Boston, MA, Hilary S. Schultz, Shannon M. Fitzpatrick,

Williams & Grainger, Boston, MA, Ricky L. Brunette, Portland, Maine, Susan J. Szwed, Portland, Maine, for defendant Recoll Management Inc.

## ORDER

HORNBY, Chief Judge.

The last issue to resolve in this prolonged False Claims Act lawsuit is what amount, if any, the private relators, Gilbert and Harvey Prawer, are entitled to recover from the Government. The Prawers have settled their claim against those parties I have called the "lawyer defendants." I previously dismissed the Prawers from this case against the bank defendants because of a settlement agreement. The Government remained in the lawsuit and recently obtained a $600,000 settlement. The Prawers claim that under the False Claims Act they should receive up to 25% of that settlement amount. The Government maintains that they should receive none of it. I conclude that the Prawers should receive 16⅔%, specifically $100,000.

### THE STATUTE

The applicable statutory language provides:

If the Government proceeds with an action brought by a person [like the Prawers], such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the ... claim, depending upon the extent to which the person substantially contributed to the prosecution of the action. Where the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to allegations or transactions in a ... civil ... hearing ..., the court may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation.

31 U.S.C. § 3730(d)(1).

### Fifteen to Twenty-five or Zero to Ten?

The Prawers, as relators, claim that they fit within the first sentence of the statute and are entitled to receive 15 to 25% of the $600,000 proceeds; the Government maintains that the Prawers fit within the second sentence and can have no more than 10%. I conclude that the Prawers are correct.

There is no dispute that the Prawers brought the False Claims Act issue to the Government's attention and started the lawsuit. They are entitled to the 15–25% range unless the second sentence of the statute applies. The Government's argument that the 10% limit applies is that this lawsuit was based primarily on disclosures of specific information from an earlier civil lawsuit here in federal court where the Prawers had been sued on the notes in question.[1] Specifically, the Government refers to a number of documents that the Prawers obtained in discovery in that earlier lawsuit and offered the Government as exhibits in support of the *qui tam* complaint.

■] Under this District's Local Rules, however, discovery is not filed and made public unless the court so orders. *See*

---

1. The Government explicitly disclaims reliance on section 3730(e)(4), which would deprive the court of jurisdiction. The District of Columbia Circuit Court of Appeals has held that nonfiled discovery does not amount to "disclosure" under the statute. *See United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 652–53 (D.C.Cir.1994) (Wald, J.). The District of Columbia Circuit thereby rejected an earlier split decision from the Third Circuit. *See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1158–59 (3d Cir.1991). The First Circuit has not addressed the issue, but I find persuasive Judge Wald's opinion for the District of Columbia Circuit. In any event, the Prawers qualify as an "original source" under that subsection, thereby avoiding its application.

D.Me.R. 5(b). The Government does not point to any order for the filing of the earlier discovery here and my review of the file reveals none. Only three of the more than thirty documents to which the Government refers in fact were filed with the Clerk's Office prior to the date that the *qui tam* action was filed.[2] It would be farfetched to conclude that this False Claims Act lawsuit was based "primarily" on those disclosures. The Prawers, through their previous lawyers, engaged in extensive factual investigation and legal analysis above and beyond the disclosures in order to lay the foundation for this successful lawsuit. I conclude, therefore, that the first sentence of the statutory provision applies and that the recovery range for the Prawers is 15 to 25%.

### Waiver

■ I previously dismissed the Prawers from this lawsuit and ordered that they would receive no attorney fees from the defendants because of a settlement agreement they had earlier entered into with the defendants. The Government argues that this earlier settlement agreement also waived the Prawers' *qui tam* share of the Government's award. I disagree. That is neither explicit nor implicit in the wording, and the Government was not even a party to the agreement.[3] The settlement agreement did not hinder the Government's prosecution of this action, a lawsuit that would not have even proceeded but for the Prawers' activity in generating it. Indeed, at an earlier stage the Government took pains to ensure that the Prawers' lawyer could continue to assist in prosecution of

the case. There is no reason to treat whatever compromise the Prawers made with the defendants as somehow surrendering their statutory right to a share of what the Government ultimately recovered because of the Prawers' initiative.

### Where Within the Range?

The Prawers seek the top end of the applicable range and the Government seeks the bottom end. The Prawers argue that they invested extraordinary resources in the False Claims Act lawsuit through the time and activities of their previous lawyer. The Government responds that the Prawers' attorney's activities were devoted to the severed lawsuit against the lawyer defendants rather than to this action against the bank defendants.

■ The division of activities to which the Government refers applies to only part of the long chronology of this litigation. Even after severance, moreover, the nature of the two lawsuits was such that efforts in one bore on efforts in the other. As the presiding judge since June 12, 1995, I am aware that the Prawers' previous lawyer actually had a very large role in this lawsuit (until I dismissed the Prawers) even though the Government was pursuing it—to the extent that on occasion I directed the attention of both the Government's lawyer and the Prawers' lawyer to section 3730(c)(1)'s statement that the Government has "the primary responsibility for prosecuting the action." On the other hand, a later Government lawyer has taken more responsibility for the lawsuit, thereby diminishing the role of the Prawers' former lawyer, and the lawsuit has

2. Those documents are the Federal Deposit Insurance Corporation's ("FDIC") complaint in the collection action, and two affidavits that Fleet Bank and Recoll Management Corporation ("Recoll") filed in support of a motion for a temporary restraining order.

3. Recoll was a party, and Recoll was a servicing agent for the FDIC and attorney-in-fact for the FDIC as Receiver for New Maine National Bank, but even if that made the FDIC a party, it was in a different govern-

mental role than the Government as prosecutor of a False Claims Act case. *See* 12 U.S.C. § 1819(a) (giving FDIC power to sue and be sued, complain and defend through its own attorneys); 28 U.S.C. §§ 516, 519 (reserving to Attorney General authority to conduct and supervise all litigation involving the United States unless otherwise authorized by law); 31 U.S.C. § 3730(b)(1), (c)(2)(A) (giving Attorney General plenary authority over settlement of *qui tam* actions).

now settled short of trial, saving all the time, energy and resources a trial would have consumed. Moreover, the Prawers did attempt to settle the entire lawsuit without the Government's approval before and during an earlier appeal, a step that could have hindered the Government's ultimate recovery. Taking all those factors into account, I conclude that a low range award of 15 to 20% is appropriate.

Accordingly, the private relators are entitled to One Hundred Thousand Dollars ($100,000) of the $600,000 settlement proceeds the Government obtained from the defendants.

So ORDERED.